My name is Andy Levin. I represent Andrew Cordova. This case involves an automobile accident that occurred on July 31, 2012. Mr. Cordova was in a residential street in Las Vegas. It was a four-lane road. He was doing about 45 mph. Another vehicle ran a stop sign. The two vehicles collided. Once they collided, there was a second accident. The vehicle spun around and hit his car again. No doubt about liability. The record makes clear. So, tell us, what's the standard for bad faith in Nevada? I'm having some difficulty in reading the Nevada cases, figuring out what the standard for bad faith is. Well, the standard for bad, I guess the standard would be is if they don't act in good faith. And so that's why you... Yeah, sure, sure. Good faith is not bad faith. But tell me, tell me what the legal standard is. Well, it would be that they had no reasonable basis to deny the claim. Okay. If that's the standard, no reasonable basis. In this case, although I think they erroneously denied the claim, as the jury verdict suggests, they had a nurse look at Mr. Cordova's records. Right. They had an MRI done. They got records from the chiropractor and the orthopedic surgeon, or at least his recommendation for surgery. And on the basis of that, they denied the claim, saying the injuries were preexisting. Seems like a dumb decision to me. I think the jury correctly awarded damages. But why is that bad faith? Well, because what we did is we, in most cases, in Nevada at least, you have to hire an expert. So we hired an individual by the name of Richard Cass. He wasn't a medical expert, right? He was just an expert on insurance practice and procedure. Exactly. Is that right? And his credentials were never disputed by anybody. Okay. So tell me why your expert submission, why the affidavit you provided in opposition to summary judgment, demonstrates bad faith. First of all, what he had an issue with was the fact that they had an in-house nurse, right, reviewing orthopedic surgeon opinions. In other words, what had happened to Mr. Cordova is he had been in an accident in 2010, and he had two labral tears, one in each shoulder. I was looking for some rule that said using a nurse as a medical expert to review medical files was improper, was negligent, or was unreasonable. And I didn't see that in Mr. Cass's report or in your briefing. So is there some basis for that? Well, it would be if she's not qualified. In other words, say that this was a jury trial, and she was a nurse on the stand, and she went to give opinions, orthopedic surgeon opinions, as to whether a labral tear or not. So for an insurance company, is there a rule that the person giving them advice on claims information would have to have the same qualifications as if the expert was testifying at trial? If there isn't, there should be. And that's what Dr. — Okay, is there or there isn't one? It's a claims practices, and it varies from insurance company to insurance company. And Richard Cass's opinion that that was negligent, it was below the standard of care, it was unreasonable, and it was done too intentionally. So he makes these conclusions, but I didn't see what the basis was other than he just concluded that it was unreasonable to rely on a nurse as a medical expert. And is there anything beyond his conclusion? Is there any case or is there any industry standard that is published? Well, there would be cases in Nevada that basically — Can you cite a case? Because I didn't see any. Well, no, I didn't cite them because it's common sense. And the second of all, you can't — in other words, you can't have an expert on the stand that would testify regarding the standard of care regarding orthopedic surgeon opinions if they're not an orthopedic surgeon. I'm not sure you're going down the right path with this. In Nevada, there used to be an aphorism that you can run a car into a truck filled with ball bearings or run a car into a truck filled with eggs. You hit the truck filled with eggs, you get much more damages, and you take the victim as you find them. In this case, he'd had the 2010 injury. And then the argument I thought you were making was he had some underlying conditions but that the 2012 accident significantly aggravated it. That's exactly right. And so with regard to the nurse, whether she's qualified or not qualified, what was the background in terms of the 2010 accident? Had the chiropractor continued ongoing treatments of him in the timeframe immediately before the 2012 accident? No, and in fact — How long a time had been between his last treatment and the time of the 2012 accident? Seventeen months. And had the chiropractor replied that he was recovered? Yes, 100 percent, that he was asymptomatic, and he released him back to work. So what was the investigation as to whether or not the 2012 accident had re-aggravated prior injuries? Was any investigation done of that? They were looking to mitigate their damages. No, I'm trying to answer my question. Was there any investigation done by the insurance company as to whether or not the 2012 accident re-aggravated prior injuries as opposed to whether he simply had them? No, I don't believe so. Well, the nurse up high, she looked at the records, and she said those tears were preexisting. Right. And so she wrote a complete report based on the review of the 2010. I mean, it may have been erroneous, but it was based on her comparison of the 2010 information with the 2012 information and the information from the emergency room and from the evidence that had been developed since that point. Of course, a chiropractor is not an orthopedic surgeon either. But that's exactly right, and that's why Dr. Tingey, who is the orthopedic surgeon, who did see Mr. Cordova, indicated that when he sustained those labral tears in 2010, they went in and they did what's called a debridement. They went in, they shaved off all of the – and a person and their own expert at the trial testified to the same thing, that a person could live with that the rest of their life and be fine. Now, Mr. Cordova, you have to understand, he was a heavy rigger in the convention industry in Vegas, very labor-intensive job. For 17 months between the first accident and the second accident, there wasn't a single medical record, didn't see a single medical provider. Went back to work full time and was doing his job, heavy labor, full time. So he was functioning fine. Is that disputed? I thought that was disputed. That was not disputed. In fact, they say it was disputed, but at the trial it wasn't disputed because he had tax returns, W-2s. It showed he made $42,000 the year before and $20,000 up until the time of the trial. That was the trial that occurred after the summary judgment in this case? Yes. Okay, so let's go back to the time of summary judgment, which is, I think, the important time in this case. Mr. Cordova at least claimed that he was – had gone back to work. Right. He had definitely gone – we had brought to trial the union steward. Well, all the union steward said is we really love him and we look forward to his return. There's really not much in the union stewards. Could you tell me whether or not there were work records submitted to the insurance company? Yes. Well, there were – There are work records. They're in the record. I just can't tell when they were submitted. They were submitted prior to them denying the claim. In other words – Okay. So I want to take you back to the first question because it's important to me. I would have no difficulty finding that there's a fact question in this case about whether the insurance company conducted a reasonable investigation. That's to say whether they were negligent in their investigation. But is that the standard for bad faith in Nevada? Is negligence in conducting an investigation bad faith or is it just negligence in conducting an investigation? Well, the standard is that they had no reasonable basis. Well, I know you keep saying that, but let me start – let me say that I think the provided them with a reasonable basis. But is – in Nevada, if the investigation is negligent, if the investigation isn't sufficiently robust, if they don't look at reasonable alternatives, does that give rise to a bad faith claim? I think it would. I don't think – Tell me what case says that. Well, I don't think there is a specific case that says that, but I – I found cases that say it. Well, that said if they're negligence in their investigation. But I think in this case, at least it was our expert's opinion, that it was an – it went beyond negligence. But I don't know how your expert can opine as to the intent of the insurance company. Because – There's nothing in this record that suggests – that suggests that they put together a scheme to turn down your claim. They repeatedly asked for records. They had some difficulty getting them. They communicated with your client. They had a second MRI done. What's the evidence that would support an opinion that they intentionally – that they set out on a course of action that led them to intentionally turn down a valid claim? Let me put it this way. If an insurance company hired an in-house nurse, right, and every single claim that came, the nurse looked at it, reviewed it, and like you said, was negligent, negligently looked at it and said – but gave them – said, okay, I'm a nurse, and I'm going to – Did you provide any evidence in summary judgment that they turned down every claim that came in through an in-house nurse? No. Let me switch it. Did the chiropractor give a letter saying that the injuries subsequent to the 2012 were causally related by the accident? Yes. And not only – And so did they come forward, other than this nurse's quick review of the file, did they come forward with any medical opinion or any other support for their denial? None whatsoever. Did they ever send them out for an IME? No. Did they ever say that there was insufficient records to allow them to make a decision? Never said it, but in the brief they filed, they say it four times, and I'm waiting to hear which record they were missing. Did they give that claim up before the district court, the claim that there was a failure to cooperate? A failure to cooperate, yes. The judge found that Mr. Cordova, instead of giving an authorization, went and got all of the medical records. Had they been the insurer in the 2010 accident? Yes, yes. So did they have all the medical records already from the 2010 accident? They had them. They noted that they had them. They gave them to the nurse to review. The 2010 claim settled. And they paid them. What's that? When was it settled? You know, it settled, I want to say, about 17 months, 18 months before this happened. So at that point in time, that's near the time when he's gone back to work and he's stopped treatment. Yes, yes. So they had all the treatment from the 2010. That's correct. Can I ask you just to shift ground for a second? You have a State statutory claim. Right. And as I read the statute, it basically says if the insurer offers to settle at a certain amount and the insurance company refuses to do so and the insurer is then put to the burden of suing, it violates the statute. Is that a fair summary, the statute? If it's unreasonable, yes. So the company refuses to pay. Right. Doesn't that cause of action depend on you first having recovered at trial or having recovered a settlement? In other words, the judge dismissed it, but it seems to me it was just simply premature, that you should be free today to go bring that claim, but until you had actually recovered more than what the insurance company offered, you couldn't bring that claim. And I thought about it. There's a case called Sosebee that says you can't do that, that you have to bring them all in the beginning. So the judge dismissed it with that prejudice and then because the judge's order seems right, which an essential element of that claim is that you recover more than was offered and then you offered to do and that hasn't occurred yet. In other words, you could go in and file a whole other lawsuit based upon the fact that the jury did exactly what you said. But my point is we need to keep that claim alive in some way, do we not? We shouldn't rule in your favor on it, but we need to keep it alive in some way. Well, there's a case called Sosebee that came out that says that you can't. In other words, when you go to a jury trial and you end up recovering more than what you had demanded and you can show that they, you know, obviously that they were wrong, that you can't do that, that you have to bring all the claims at once. No, I understand. So you've brought the claim. Right. You've brought the claim. The jury trial has now met the statutory qualifications. Right. What do we do with that claim? Do we say that you get judgment on it? And if so, in what amount? Well, it's under the Unfair Trade Practices Act. And the problem is, is the judge prematurely. Okay, I understand. Tell me what you want us to do. You're writing the last line in the opinion. Tell us what you want us to do. I want you to reverse that where he says that there was no claim for the Unfair Trade Practices Act and remand that for a new trial on that issue. In other words, we can't file a whole other lawsuit on it because it would be claim preclusion and it would be restitutorial. It just seems strange to say the judge was incorrect because all the judge said was we haven't arrived at the appropriate point yet. So, but I understand your position. Do you want to save some time for rebuttal? Yes. Can I have the last time for a thank you? Thanks. Your Honors, may it please the Court. My name is Michael Wall and I am counsel for American Family and we thank you for the opportunity to be here today. Could you start with the issue, because it's a relatively minor one that we ended with. We have a statute that says if the insured offers to settle and the insurance company doesn't settle and the insured is then forced to go to trial and gets a judgment that's at least the size of the settlement, that the insurance company is statutorily liable under the Unfair Trade Act. The judge said, well, you haven't recovered yet, so I'm dismissing that claim. They've now recovered. What do we do with that claim? The judge didn't say that they hadn't recovered yet and that's why he denied the claim. That motion was brought after discovery was all complete and at that point in time they had absolutely no evidence of an actual violation of the statute. The violation occurs under this statute when you fail to settle the claim at an amount that he later recovers. The statute, the district courts have made quite clear the statute requires no bad faith, no violation of anything else. It's merely an insurance code provision that was later turned into a private cause of action. And it says as a consumer protection matter, if you force somebody to go sue to obtain a settlement that he was willing to do in the first place, it's violated the statute. I have no idea what the remedy is. That's a separate issue. But I can't see any basis for dismissing this claim with prejudice until we know what the plaintiff recovers. There is no Nevada Supreme Court case and there is no Nevada law that would support it. There are plenty of district court cases, right? There are no district court cases that I'm aware of. You think that this statute is equivalent to bad faith? The statute is not equivalent to bad faith. It does not require the statute as a whole does not require bad faith. For this provision, what are the elements of the violation? For this provision, we do not have any specific statement in any case that I was able to find from the Nevada Supreme Court, but we have multiple. But just read the statute for me. What are the elements of the violation? The elements of the violation are that you force a person to litigation. Right. Let me get it exactly. You force a person to litigation. To obtain a settlement at least equal to the one that he previously was willing to engage in. You compel the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured. So it contemplating an action, not just an action directly against the insurance company itself, a first-party action, it could apply there, but it also contemplates actions that would be separate from that. And it's not a strict, there's no, but let's work through the elements. He was forced to bring suit to recover more than you offered in an action by the insured. So your defense in this case is that he really should have sued the guy who ran into him rather than the insurance company. Is that your defense? No, that's not my defense at all. My defense is that. Then all elements of the statute have now been satisfied. I don't believe that the elements of the statute have been satisfied. The Nevada Supreme Court has always required that there be, that there be some wrongfulness in the conduct. This is a, what you're saying is. What is the, excuse me, what is this, the Nevada Supreme Court case that requires an additional element which is not stated in the plain language, which is wrongfulness in the conduct? What is that case? In the context of these unfair trade practices. Nevada Supreme Court, as near as I can tell, has not addressed this. Multiple district courts have, multiple Federal courts and district courts in Nevada have addressed it, and they have implied or found, since it is wrongful conduct, that you can't say. Cite the case. Cite the case for me that says that with respect to this subsection of the statute, there must be some wrongful conduct other than failing to settle a claim at the level. I can't cite you a case. Well, you just told me there were multiple district court cases that said so. Tell me which one says so. Recently, in Kalber v. American Family and Alexander v. Striegel v. American Family, we have decisions from the district courts. So you didn't cite those cases. Would you provide supplemental citations for those? I don't. They don't directly address the issue because I wasn't able to find a case that directly addressed the issue. And it's perfectly okay to say no case addresses the issue, but you said the Nevada Supreme Court has held this when Judge Acuti has. No, I said the Nevada Supreme Court has not addressed it, and nobody has held that it's strict liability. So I can only come to the argument that this statute was never intended to be strict liability, that every time there is an excess verdict, that is an unfair claims practice. So could I just the trial judge reduced the verdict to the contractual limits. If it goes back on bad faith, they'd be entitled to get compensatory damages, wouldn't they? If there were bad faith, there's a difference between unfair claims practice? We'll make a decision on that, but if it goes back, the compensatory damages would be recoverable, right? Compensatory damages would be recoverable, but compensatory damages? They wouldn't be limited by the $100,000 policy limits. And they're not. We paid the interest in 10. So in terms of the bad faith, in this case, you had one nurse take a look at it. And did you ever, at the time, did you have any evidence that he was getting No, we didn't. Well, how could a nurse come to a conclusion that it was just the 2010 accident? Monday morning quarterbacking is great. This is a paid nurse, right? She's your employee. We didn't just rely on the nurse. The nurse is a red herring. What did you rely on instead, in addition? In effect, what said that whatever injuries from 2010 had not been aggravated? I'd like to hear what evidence was in the record that made the insurance company's decision to deny coverage reasonable. Could you please just go through whatever the evidence was in the record that was presented? There was no record at that point. All the insurance company had was conversations with the plaintiff. They had the records they were able to obtain, which were partial medical records, or they didn't know whether or not they were partial medical records. But the point is, if you didn't have all the medical records, how can you make a decision? If you don't have all the medical records, it's premature to make the decision. We're Monday morning quarterbacking. So what was the evidence on which the insurance company relied? Can you please just state what the evidence was? The evidence was they couldn't get the medical records and they couldn't get them any authorizations to get them, so they didn't know whether they were completely disputed. That's not evidence. What was the evidence? That is evidence. The medical records that they did have showed that he had had a serious accident previously with shoulder surgeries. There's going to have to be a the amount of the damages. The fact that he had an accident and the fact that there was some exacerbation was not something that we denied. The insurance company has a right to go to trial if they have a good faith basis. And if you read the transcript here, you could see the jury could have gone the other way and that decision would have been supported by substantial evidence. These were serious issues that were actually tried, and it is not bad faith simply to go to trial. Saying it doesn't make it so, but you didn't make any offer. So you think he had an underlying condition. You just admitted that the insurance company knew it had been aggravated by the 2012 accident, but you didn't make a counter to say that we offer you $20,000 or $30,000. In fact, you just took the position, we'll offer you nothing. He had already received $25,000, and looking at the evidence that we had, the medical evidence that we had, even their expert eventually, and of course we didn't have that at that time, but even their expert eventually said it was 80% Tell us what you had. Judge Yakut has asked you several times. We have records showing that there was a legitimate Previous accident. Because of the previous accident, because and determining how much of that went to the first accident and how much went to the second accident, that they were requesting $100,000 when it appeared that there wasn't a basis for that. Don't tell me what they were requesting. Tell me what evidence you had. You sent a letter on July 2013 to Mr. Cordova saying we're denying your claim because the only injuries that you suffered as a result of the 2012 accident were neither of which dealing with aggravation of the labor of tears. So that was your conclusion, and that's why we're not paying you any money. So tell me, tell me, tell me what evidence that conclusion was based on. Don't tell me what he was arguing. Don't tell me the mental factors. Tell me what evidence that conclusion was based on. It was based on all of the medical records that they were able to obtain, which they didn't consider to be complete. So let's stop there. What records did they have? They had the 2010 records. They had some of the 2010 records. They had the records that were in their own files. Roberts. But they didn't get to go out because of non-cooperation and make sure that those were all of the records. Sotomayor The judge says there's a disputed fact about whether or not he provided authorizations to get medical stuff. So that's not a basis for summary judgment. So I'm trying to figure out what you had. Don't tell me what you didn't have. You had the medical records we had. Some of the medical records for 2010, some of the medical records for later. We had some, we did not have the films of the MRIs. We didn't have what we needed to go forward with NIN. Okay, so why didn't, the denial doesn't say, I'm sorry, you still haven't given enough of us records. They said, we've concluded that the only injuries you suffered as a result of the 2012 claim are multiple abrasions on your face, arms, and legs, acute moderate sprains, bilateral shoulder sprains, right thumb and wrist sprain, and a right elbow sprain. On what basis in the absence of the 2012 records could you, could the nurse make that conclusion? Because their only records that had been provided from this new accident were from, that's what the diagnosis was from the doctors. No, they, what was provided in the record shows the chiropractor sent in a letter that says, my opinion, he's a chiropractor, my opinion is that these injuries were caused by the 2012 accident. He's, chiropractor also says he had recovered from the 2010 accident. But the MRI shows. The orthopedist says, the orthopedist says these injuries require surgery. So under those circumstances, how can you conclude without further investigation that the injuries weren't caused by the 2012 accident? Insurance companies have to make determinations as to whether or not they have a basis to pursue a matter to trial. Pursuing a matter to trial is not per se bad faith just because there's an excess verdict. It's not bad faith. They have to have had no reasonable basis to pursue these to trial. The amount was disputed. How to apportion it between the two accidents was disputed. Whether or not he went back to work was disputed, hotly disputed. That becomes the number one thing. And there were no records of him working. All we have is him saying, I'm working. The only medical. Your denial letter doesn't say that, does it? Your denial letter doesn't say you suffered no damages because you went back, you weren't working. At the time of the denial letter, the only thing we had about him not working was him calling up and saying, I haven't been working. And we asked for additional records to support that. Nothing, not a thing. So now, fast forward to the time of trial, he still doesn't have records. And yet, I'm not questioning the jury. I think it could have, could have, should have gone the other way. But the jury gets to decide it. That's the problem, that's the system that we have. The jury argument doesn't work, I think. But let me try this a little bit differently. I read the Nevada cases as saying the reasonableness of your denial depends on the reasonableness of your investigation. Do you agree? Yes, and I believe there was reasonable investigation. And every attempt, they contacted them as the note said. Every other week, attempting to get more and additional information. It's not unreasonable to rely on a nurse who is highly trained to look at the records. The fact that that nurse can't testify at trial has nothing to do with whether or not that was a reasonable thing to do with the records that we had. At the time we had serious injury, the last record that we had from that prior injury was he's still in pain, and he's still not working, and we, and, but he, and we don't know what happened in the next 17 months, and he won't cooperate. And so we made a determined- Did Judge Gwinn at Nevada has what in, in torts class we used to call the eggshell plaintiff rule? Absolutely. And that, the eggshell plaintiff doesn't mean that, that the, he recovers everything. We still apportion in Nevada. He didn't make any offer at all, though. Because he had been compensated, and based on the records that we had at the time. I mean, so you, you had, so your argument is that, how much did he have in medical bills regarding the surgeries? Or what the surgeries have cost? At that time, he, all we had was he had called up and said, I need surgeries. That's all the, we had, and he said, they will be $40,000. So, how do, how do you offer, how do you say the 25,000 from the tort fees, there is enough compensation if the surgeries are going to be 40,000, not to mention the wage loss? How do you offer any money at all for surgeries when you have no evidence whatsoever that they are required, and you have medical records that show that the surgeries were already done? And all you have is his words saying it. The chiropractor and you have the orthopedist both saying that the surgeries are related to the 12 accidents. The chiropractor and the orthopedist didn't say that before the time when the decision was made. And even if they did, that's what trials are about. You get an expert who says that's not so, and you have a right to pursue it to trial. Well, you certainly did, and you might have won that trial, although it sounds like you had scant evidence. But you're in a position where you lost it, and so now your argument is, is that you were justified in not having to face the bad faith claim. That's not the argument. The argument is it was reasonable determination at the time it was made that we had reasonable defenses that should be pursued to trial. That's the argument. So, the test under Nevada law is whether there was a good cause or proper cause to deny, right? The test under Nevada law is whether there was a reasonable basis to deny at the time it was done. And you agree that we view reasonable basis through the lens of whether or not the investigation was reasonable. There had to have been a reasonable investigation, and I believe there was. Okay, thank you. We'll hear from rebuttal. Just really brief, two things. They offered zero, the jury came back with 351,000. The denial letter, right, they have the records because it's referenced right in there. The laboral terrorist and the left and right shoulder president of this accident would be related. They had all of the prior records. So, I just asked them when I was up here, I said, come and tell me, and answered your question the opposite, which record did you not have? Okay, because the exact records that Mr. Cordova gave to the insurance company, the exact records that were utilized by them in denying the claim are the exact records that we used when we went to trial. There was not, the only one they didn't have was an ambulance report that we gave subsequent to filing the lawsuit. So, with the district, or the trial judge gave a directed verdict on the punitives as well. He granted summary judgment on that. So, if it goes back on the bad faith claim, is your argument that that ought to be revisited? Yes, in other words, and counsel was right in their brief. We allege punitive damages as part of the violation of the covenant of good faith and fair dealing and as part of the Unfair Trade Practices Act. Can you get them under the Unfair Trade Practices Act? Yes, you can. Under this section of the Unfair Trade, I understand there's other sections that involve outrageous conduct. Is there any case that says you can get punitives under this, the section that we've been focusing on, the one where the offer is less than the recovery? Yes, I think if you can show that it was intentional and it was. No, I'm just, is there any case that says that? I don't know, Your Honor. I don't know. I found cases that deal with other sections of the Act, but not with that one. Right. I would assume yes, because it ties back into the, although they are separate and distinct causes of action, it ties back into it. By the way, the Nevada Administrative Code, sorry, they, when you send a denial letter, right, if there are records like counsel keeps saying, and they have said from day one in this case that they were missing records, and I've asked, tell me, what record were you missing? Under the Nevada Administrative Code, they can send a letter and they can say, we're missing records, we need more time to process the claim. They didn't do that. They, in their mind, had sufficient records, they had everything that they needed to deny the claim, and they denied the claim wrongfully based upon bad information that they got from a nurse, which, of course, at trial, we were able to prove she was out in left field. Okay. Thank you. I think we have your argument. The case of Cordova v. American Family Mutual Insurance is submitted.
judges: Ikuta, Hurwitz, Gwin